IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TUCKER, | CASE NO. CV-F-09-1348 LJO DLB |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION** (Doc. 32) |
| vs. | |
| ALLSTATE INDEMNITY COMPANY, | |
| Defendant. | |

## INTRODUCTION

Defendant Allstate Indemnity Company ("Allstate") moves for reconsideration of this Court's October 15, 2010 order on the parties' cross-motions for summary judgment ("the MSJ Order"). In the summary judgment motion, Allstate moved for judgment as a matter of law in its favor on plaintiff John Tucker's ("Mr. Tucker's") breach of implied covenant of good faith and fair dealing claim. In the MSJ Order, this Court denied Allstate's motion because it found that factual disputes exist on the underlying claim. Allstate argues that this Court committed clear error by resting that decision on deposition testimony of its fire and theft forensic expert Alex Wong ("Mr. Wong") because that testimony is (1) directly contrary to the parties' stipulated facts, (2) inconsistent with other parts of Mr. Wong's testimony, and (3) improper hindsight evidence. Allstate's arguments misunderstand the Court's MSJ order and conclusion, which did not rely primarily on Mr. Wong's testimony. Accordingly, this Court DENIES Allstate's reconsideration motion.

# BACKGROUND

This is an insurance coverage dispute. Mr. Tucker initiated this action against Allstate claiming that Allstate denied his insurance claim erroneously and in bad faith. Mr. Tucker sought coverage pursuant to a policy issued by Allstate, Policy Number 627312634 ("the Policy"). The Policy provided coverage in the event of theft, loss and/or damage to Mr. Tucker's truck, a 2007 GMC Sierra 1500 pickup truck ("the Truck"). On September 21, 2007, the Truck was found on the westside of Fresno burned. Mr. Tucker reported a claim to Allstate for the alleged theft and destruction of the Truck. After an investigation, Allstate denied coverage for Mr. Tucker's claim on February 13, 2008. The parties dispute the denial of this claim, and set forth the following facts to support their positions:

## Allstate's Supporting Facts

Mr. Tucker purchased a 2006 red Dodge truck in early 2006. After a mechanical failure destroyed that truck, Mr. Tucker purchased a 2007 Dodge truck with no money down in September 2006. Shortly thereafter, the new 2007 Dodge Truck started experiencing mechanical problems. Mr. Tucker believed that these mechanical problems were never properly repaired. Consequently, Mr. Tucker traded in his 2007 Dodge for the Truck, which is the subject of this action.

Mr. Tucker put no money down on the Truck, and owed $8,674.42 more on the 2007 Dodge truck than its trade-in value. The Truck's purchase price was $28,538.83, but Mr. Tucker had to finance over $42,000 to purchase it, because, among other things, he had to include the roll-over balance from the 2007 Dodge. Mr. Tucker's monthly payments on the Truck were $720.21.

When he purchased the Truck, Mr. Tucker received two sets of keys for it. Mr. Tucker never lost either key, made copies, or ordered additional keys. No one other than Mr. Tucker drove the Truck after he purchased it.

On September 20, 2007, Mr. Tucker parked the Truck in the driveway of his home and then activated the Truck's alarm before going to bed that night. Mr. Tucker contends that the Truck was stolen between 10:00 p.m. on September 20, 2007 and 4:10 a.m. on September 21, 2007. At 4:15 a.m. on September 21, 2007, the police came to Mr. Tucker's home to inform him that the Truck had been burned and was located on the westside of Fresno.

///

**Mr. Tucker's Claim Raised Potential Fraud Indicators**

At the time of the alleged theft, Allstate insured the Truck under the Policy. Like all standard automobile policies, the Policy contains a "cooperative provision," requiring insureds to produce receipts and other information and to appear for examinations under oath. In addition, the Policy contained a "Fraud and Concealment" clause, which provides as follows:

> **Fraud**
> This policy will not apply to any claim in which an insured person has concealed or misrepresented any material fact or circumstance.

On September 21, 2007, Mr. Tucker reported a claim to Allstate for the alleged theft and destruction of the Truck. Upon receipt of the claim, Allstate immediately arranged for a rental vehicle for Mr. Tucker. Allstate also commenced an investigation to determine the cause of the loss. Allstate assigned the file to adjuster Ronnie Tuckett Lagade ("Ms. Lagade"), who contacted Mr. Tucker the same day to obtain additional information about the claim. Mr. Tucker confirmed that both keys for the Truck were accounted for and in his possession at the time of the loss.

During Ms. Lagade's investigation, she discovered three indicators of potential fraud requiring further investigation: (1) a change in policy coverage less than 90 days before the claim; (2) another fire within the prior three years; and (3) a prior theft claim of another vehicle. Because of the fraud indicators, Ms. Lagade referred the claim to Allstate's Special Investigations Unit ("SIU").

**SIU Investigation**

On October 19, 2007, Allstate assigned the claim to Connie Wolf ("Ms. Wolf"), an SIU adjuster. During the course of her investigation, Ms. Wolf learned, among other things, that Mr. Tucker had already purchased a new 2008 GMC truck. As it turned out, Mr. Tucker had purchased the new vehicle the day after the Truck burned, and before he saw the Truck's damage. Ms. Wolf further learned that Mr. Tucker had a roll-over balance from his 2007 Dodge truck and that he had GAP insurance on the Truck. In addition, Ms. Wolf called the dealership where Mr. Tucker purchased the Truck and learned that the Truck had a factory-installed security system known as PassLock, which made it extremely difficult (if not impossible) to steal the Truck without a key.

On October 23, 2007, Ms. Wolf concluded that there was insufficient information to warrant further investigation and requested approval to transfer the file back to the claims office for payment to

Mr. Tucker. Ms. Wolf made her request before she had seen the Truck's purchase agreement, a copy of which she requested from the claims office.

The next day, Ms. Wolf received a copy of the Truck's purchase agreement, which reflected the rollover balance from Mr. Tucker's 2007 Dodge that became part of the financing of the Truck. She concluded that as a result of the Truck's being burned and Mr. Tucker's having GAP insurance, Mr. Tucker was able to purchase a newer vehicle (the 2008 GMC) with no rollover balance. This resulted in a lower monthly payment for Mr. Tucker. This information led Ms. Wolf to believe the claim warranted further investigation. Accordingly, Ms. Wolf requested and received approval to retain the file for further investigation.

**Allstate Retains Automotive Fire and Theft Forensic Expert**

On October 29, 2007, Allstate retained Lee S. Cole & Associates ("Lee Cole") to examine the Truck and to determine how it was driven away from Mr. Tucker's residence. Lee Cole assigned Alex Wong ("Mr. Wong") to conduct the investigation.

After inspecting the Truck multiple times, Mr. Wong provided Allstate with a summary of his findings and conclusions on November 14, 2007. Mr. Wong reported that the ignition lock had external cosmetic damage but was not compromised, that his forensic lock analysis concluded that the lock was neither picked nor impressed, and that the Truck's transmission shift interlock mechanism was functioning as designed. In addition, Mr. Wong explained that the Truck was factory equipped with PassLock II, a sophisticated security system that provides content theft protection and immobilizer protection if unwanted entry is detected. Based on his observations, Mr. Wong concluded that the Truck was last driven with one of the ignition keys.

**Allstate Retains Outside Coverage Counsel**

Based on Mr. Wong's conclusions, Ms. Wolf requested Mr. Tucker's examination under oath ("EUO"). Allstate retained outside coverage counsel to conduct the EUO. The EUO was conducted on December 6, 2007. The next day, Allstate's outside counsel provided a summary, explaining that Mr. Tucker testified as follows: Nick, a salesperson at Auto Sound Lab, told Mr. Tucker that an after-market alarm system ("Clifford alarm") Mr. Tucker had installed in the Truck bypassed the Truck's factory system and allowed the Truck to be operated without the key by using the Clifford alarm's remote

feature. The outside counsel recommended that Allstate further investigate Mr. Tucker's statement about the Clifford alarm.

Mr. Wong inspected the Truck to determine whether the Clifford alarm had been installed. Mr. Wong also visited the Auto Sound Lab and spoke with the technician who installed the Clifford alarm in the Truck. The technician informed Mr. Wong that he would have installed the Clifford alarm according to Clifford's recommendations. Mr. Wong reported back to Ms. Wolf, and suggested further questions to ask Mr. Tucker about the Clifford alarm.

A supplemental EUO was conducted on January 10, 2008 to ask Mr. Tucker the questions suggested by Mr. Wong. Mr. Tucker testified that he used the remote button every day and that he had to put a key in the ignition to turn it before he drove the Truck. Mr. Tucker further testified that if he did not use the key, the Truck's engine would die.

Mr. Wong concluded, based on the supplemental EUO and further discussions with the Auto Lab technician, that the Clifford alarm was installed correctly and that there was no way that the PassLock alarm system was bypassed and the Truck was driven away without the use of the ignition key. Mr. Wong further concluded that even if the alarm was not activated, the PassLock system would have provided the immobilizer protection.

**Allstate Denies Coverage**

In a February 6, 2008 coverage opinion, Allstate's outside coverage counsel recommended that Allstate deny Mr. Tucker's claim for material misrepresentations and failure to cooperate. Counsel advised Allstate as follows, in pertinent part:

> It is our opinion, based on the totality of the circumstances, that Mr. Tucker misrepresented and concealed facts during the investigation of this matter. The testimony of Mr. Tucker along with the interviews of Mr. Ellis and John and findings by Mr. Wong establish that if the alarm was set as Mr. Tucker said it was, the vehicle was more likely than not driven to the recovery site using one of the two keys that were in Mr. Tucker's possession and control. Thus, at a minimum, evidence establishes that Mr. Tucker had misrepresented facts about his keys to the vehicle and his knowledge about who burned the vehicle. There is other circumstantial evidence which supports this conclusion, including his purchase of ZA coverage shortly before the loss, his testimony that gasoline was the cause of the fire and his purchase of a new vehicle the next day before he had even seen the recovered vehicle (which indicates that he knew the vehicle could not be repaired). He also had a motive to dispose of the vehicle in light of the deficiency that was financed from his prior vehicle. In the end, he ended up with the 2008 version of the same vehicle with a much lower monthly payment.

>In our opinion, this conduct clearly impaired Allstate's ability to conduct a thorough investigation and learn the true facts surrounding this loss.  Thus, in our opinion, Mr. Tucker has not provided Allstate with adequate and sufficient information in order to fully process and investigate this claim.
>
>Therefore, we recommend that coverage for this claim be denied in its entirely based on the application of the "Fraud" provision and the implied cooperation clause.

Allstate denied coverage for Mr. Tucker's claim in a February 13, 2008 letter.

### Mr. Tucker's Supporting Facts

After purchasing the Truck and obtaining the Policy, Mr. Tucker added some after-market parts to his vehicle, including a tool/ladder system, a tool box, a breathing system, a complete stereo system, and an alarm system.  He upgraded his Policy to include "ZA coverage," around August 21, 2007.  The upgrade provided the additional coverage of his stereo system.

On September 20, 2007, Mr. Tucker returned home from work, parking his Truck in his driveway.  He set the Truck alarm before entering his home.  Mr. Tucker ate dinner and went to sleep.  At around 4:15 a.m. the next morning, September 21, 2007, Mr. Tucker was notified by the police that his truck was stolen and burned in an area referred to as the "Westside of Fresno."  Of the Westside, the police officer testified that "there's a lot going on in this particular area–gang activity, all type of things."  The Fresno Police department concluded that Mr. Tucker's Truck was stolen and burned by an unknown suspect without Mr. Tucker's knowledge.

Mr. Tucker reported the loss to Allstate.  Allstate conducted an investigation which required Mr. Tucker to comply with Allstate's request for recorded statements and an EUO.  Mr. Tucker was the sole target of Allstate's investigation.  Allstate found no evidence of wrongdoing by Mr. Tucker.  For example, Allstate requested Mr. Tucker's phone records for the night in question, but found that the only calls were from the police and to Allstate during the relevant times.

Allstate denied coverage of the loss of Mr. Tucker's Truck.  Allstate based their findings on the facts that Mr. Tucker purchased GAP insurance to cover the rollover balance from a previous vehicle, and that he purchased a replacement vehicle after learning from the police that his Truck was a "total loss."  Regarding the immediate purchase of a replacement vehicle, Allstate failed to give any deference to the fact that the Truck was an instrumentality of Mr. Tucker's livelihood, as he is a handyman. Moreover, Allstate considered that Mr. Tucker would save $150 per month on the new truck he

purchased after the incident, despite the fact that Mr. Tucker was able to afford his monthly truck payments at all relevant times.

Allstate also based its denial of coverage on the testimony of Mr. Wong. In deciding to deny coverage, Allstate relied heavily on Mr. Wong's conclusion that, due to the PassLock anti-theft system, an actual key was required to operate the truck. However, Mr. Tucker contends that the anti-theft system had already malfunctioned prior to the theft. Furthermore, according to Mr. Wong's testimony, unlike the newer systems from the same manufacturer, the PassLock system in Mr. Tucker's truck did not require an actual original key to be used. Mr. Wong further admitted that the owner's manual that described how the alarm system could be bypassed was available to the public on the manufacturer's website.

## Summary Judgment Motion and Order

The parties moved for cross-summary judgment motions. Mr. Tucker moved for judgment in his favor on his underlying claim for breach of contract, and also on his claim that Allstate breached the implied covenant of good faith and fair dealing in denying his insurance coverage claim. Allstate moved for summary adjudication in its favor on Mr. Tucker's breach of good faith and fair dealing claim. In addition, Allstate moved for judgment in its favor on Mr. Tucker's claim for punitive damages.

In its October 15, 2010 MSJ Order, this Court denied Mr. Tucker's summary judgment motion in full and granted in part and denied in part Allstate's summary adjudication motion. The Court denied Mr. Tucker's bad faith argument because "based on Mr. Wong's experience with PassLock, Mr. Wong's conclusion that the Truck could not be operated without a key, and the undisputed fact that only Mr. Tucker had possession of the key, Ms. Wolf's reliance on Mr. Wong's recommendations may have been reasonable." MSJ Order 15:18-20. Similarly, the Court denied Allstate's motion for summary adjudication of the bad faith issue. The Court found that it could not determine the issue as a matter of law because "the underlying facts are disputed, the evidence is disputed, the integrity of the investigation is questioned, and inferences can be drawn in favor of both Mr. Tucker and Allstate. . . . Accordingly, questions of fact remain as to whether Allstate's reason for withholding benefits was unreasonable or without proper cause." MSJ Order 17:14-17.

On November 5, 2010, Allstate moved for reconsideration of the MSJ Order. Mr. Tucker

opposed the motion, and Allstate replied.  Pursuant to local rule 230(g), this Court found this motion suitable for decision without hearing and issues the following order.

### STANDARD OF REVIEW

The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir.1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir.1992); *see also*, Fed. R. Civ. P. 59(e). Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C.Cir.1987); *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir.1983) (en banc).  A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Id.; see also, Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), *affirmed in part and reversed in part on other grounds*, 828 F.2d 514 (9th Cir.1987). "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

Motions for reconsideration are not the place for parties to make new arguments not raised in their original briefs. *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-6 (9th Cir.1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought. *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *U.S. v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D.Cal.2001).

With these standards in mind, the Court turns to Allstate's arguments.

### DISCUSSION

Allstate moves for reconsideration of this Court's denial of its summary adjudication motion on Mr. Tucker's breach of the implied covenant of good faith and fair dealing claim.  Allstate argues that

this Court improperly decided that a genuine issue of material fact existed with regard to whether Allstate's expert witness, Mr. Wong, conducted a thorough examination. Allstate argues that it was clear error to rely on Mr. Wong's testimony regarding the forensic lock analysis because that testimony is: (1) contrary to the parties' stipulated facts, (2) inconsistent with other parts of Mr. Wong's deposition testimony, and (3) improper hindsight evidence. Allstate incorrectly focuses on Mr. Wong's testimony as the basis for this Court's conclusion in the MSJ Order. As discussed more fully below, this Court's conclusion was not based on Mr. Wong's challenged testimony. Rather, the Court considered all of the evidence presented by the parties, which established that genuine issues of material fact exist on the underlying claim. Allstate's arguments are inapposite to this Court's conclusion in its MSJ Order. Accordingly, Allstate has failed to establish that this Court committed clear error, and Allstate's reconsideration motion is denied.

In its MSJ Order, the Court concluded that "the factual issues presented in this action must be determined by a jury," precluding summary adjudication in Allstate's favor. MSJ Order, 18:1. Allstate argued that the denial of Mr. Tucker's claim was reasonable as a matter of law because, due to Allstate's reasonable reliance on an expert's opinion, there was a genuine dispute as to coverage. In denying Allstate's argument the Court considered that:

> [w]here, as here, there is a dispute as to the underlying facts, a trial court cannot determine as a matter of law whether such a dispute is "genuine." (quoting *Chateau Chamberay*, 90 Cal. App. 4th at 348 n. 7 ("Provided there is no dispute at the *underlying facts* (e.g. what the parties did and said), then the trial court can determine, *as a matter of law*, whether such dispute is "genuine".) (emphasis in original).

MSJ Order 17:21-25. In addition, the Court pointed out that:

> [t]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact." *Chateau Chamberay*, 90 Cal. App. 4th at 347. The question of reasonableness "becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Id*. (citing *Paulfrey v. Blue Chip Stamps,* 150 Cal. App. 3d 187, 196 (1983)).

*Id*. at 17:11-13. The Court acknowledged that in this action "the underlying facts are disputed, the evidence is disputed, the integrity of the investigation is questioned, and inferences can be drawn in favor of both Mr. Tucker and Allstate." *Id*. Based on these statements of law, and the disputed underlying facts, this Court concluded that "questions of fact remain as to whether Allstate's reason for withholding benefits was unreasonable or without proper cause." MSJ Order 17:14-17. On these bases,

9

this Court denied Allstate's summary adjudication motion.

Allstate continues to argue that it is entitled to judgment as a matter of law in its favor because its reliance on its expert's opinion was reasonable. Allstate's argument ignores that genuine issues of disputed fact remain on Mr. Tucker's underlying claim. Whether an insurer's refusal to pay policy benefits was unreasonable is dependent upon the facts in each case. *Paulfrey v. Blue Chip Stamps*, 150 Cal.App.3d 187, 194 (1983). The reasonableness of an insurer's claims-handling conduct is thus ordinarily a question for the jury. *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 90 Cal.App.4th 335, 346 (2001). The question of reasonableness only "becomes a question of law when the evidence is undisputed and only one reasonable inference can be drawn from that evidence." *Id*. Here, the parties dispute the evidence. The parties dispute whether Mr. Tucker misrepresented or concealed facts during Allstate's investigation. In addition, the parties dispute whether Mr. Tucker had information as to who burned his Truck, whether a key was used to drive the Truck, or whether a key was necessary to drive the Truck from Mr. Tucker's driveway to the westside of Fresno. The parties also dispute the condition of the after-market alarm that Mr. Tucker installed on his Truck. Given these disputes, a fact-finder could draw inferences in favor of either Mr. Tucker or Allstate on both the underlying claim and the issue of reasonableness. Accordingly, Allstate fails to establish that this Court committed clear error in denying its summary adjudication motion.

As set forth above, this Court's conclusion did not rely exclusively on Mr. Wong's testimony. In determining that "the underlying facts are disputed," this Court analyzed all of the evidence presented by the parties MSJ Order, 17:14-15. The Court did consider that when viewed in a light most favorable to Mr. Tucker, Mr. Wong's testimony "supports Mr. Tucker's inference that Allstate failed to conduct a thorough investigation and Allstate's reliance on Mr. Wong's preliminary report was unreasonable." *Id.* 18:8-14. The Court's ultimate conclusion, however, was based on the fact that "Mr. Tucker has submitted evidence to dispute the underlying facts of this case. He has submitted evidence that he was not involved with the fire that destroyed his Truck. Because the parties dispute the underlying facts, this Court cannot determine this issue as a matter of law." *Id*. at 17:25-28. In addition to these clear statements that the Court's ruling was based on the disputed underlying facts, the Court's decision also relied on its previous discussion of the disputed facts as set forth in its statement of facts and as

discussed in its denial of Mr. Tucker's summary judgment motion in full. This Court's conclusion would remain even if this Court did not consider the challenged testimony of Mr. Wong, because Mr. Tucker established that the disputed facts "require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, none of Allstate's arguments, all of which challenge this Court's reliance on Mr. Wong's forensic lock analysis testimony, establishes that this Court committed clear error to deny Allstate's summary adjudication motion. Accordingly, Allstate's reconsideration motion is denied.

Moreover, Allstate's inapposite arguments fail for additional reasons.

Allstate's first argument fails, because it is an attempt to set forth new arguments not raised in opposition to Mr. Tucker's summary adjudication motion. Allstate argues that this Court committed clear error in relying on Mr. Wong's testimony because the cited testimony contradicts the parties' stipulated facts. Although Mr. Tucker relied on this evidence in his moving papers, Allstate failed to object to this evidence on this ground. As stated above, motions for reconsideration are not the place for parties to make new arguments not raised in their original briefs. *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-6 (9th Cir.1988). Allstate had a burden to raise this argument in its opposition to Mr. Tucker's summary judgment motion. Allstate's failure to do so is insufficient grounds for reconsideration.

Next, Allstate argues that it was clear error for this Court to rely on Mr. Wong's testimony regarding his failure to complete the forensic lock analysis because that testimony is inconsistent with the weight of his later testimony that indicates he did complete the analysis. Rather than demonstrate clear error, however, this argument supports the Court's conclusion that genuine issues of material fact exist to preclude summary adjudication on this claim. Summary adjudication is granted only when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Allstate's challenge to Mr. Wong's inconsistent testimony demonstrates that questions exist as to whether Mr. Wong conducted the lock analysis and whether Mr. Wong's investigation was thorough or complete. Although Allstate may present this argument to a fact-finder, Allstate fails to establish that it is entitled to judgment as a matter of law because the testimony is inconsistent. Accordingly, the Court made no clear error to discuss this testimony in its MSJ Order.

Finally, Allstate argues that it was clear error for the Court to rely on Mr. Wong's testimony that he did not complete the forensic lock analysis because that evidence is improper hindsight evidence. In its MSJ Order, this Court recognized that the "reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events that may provide evidence of the insurer's errors." *Id*. at 13:17-20 (quoting *Chateau Chamberay*, 90 Cal. App. 4th at 347). Allstate argues that Allstate had no reason to question the veracity of Mr. Wong's statements at the time it denied Mr. Tucker's claim, and that to question Allstate's reliance based on facts unavailable to Allstate at the time of that reliance is an improper use of hindsight evidence. While Allstate correctly points out that this Court should not consider hindsight evidence, Allstate ignores the relevant inquiry. This Court considered whether Allstate acted reasonably in investigating, processing, and evaluating the insured's claim when it relied on those statements. *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723 (2007). Allstate was aware at the time it made its decision that Mr. Wong had not submitted a final report, and that Allstate normally relies on final reports to make coverage decisions. Thus, there were facts available to Allstate at the time it denied Mr. Tucker's claim that called into question the thoroughness of Mr. Wong's investigation. Accordingly, Allstate fails to demonstrate clear error, or that the circumstances require this Court to reverse its prior order.

## CONCLUSION

For the foregoing reasons, this Court DENIES Allstate's reconsideration motion

IT IS SO ORDERED.

**Dated:    December 8, 2010                /s/ Lawrence J. O'Neill**

12

UNITED STATES DISTRICT JUDGE